MAYBELLE D. GOUERT, Respondent, v. THE MECHANICS
AND METALS NATIONAL BANK OF THE CITY OF NEW YORK,
Appellant, Impleaded with JOSEPH H. STOPPANI and Others,
Respondents, and ABRAHAM S. GILBERT, as Trustee, etc.,
Defendant.

First Department, May 14, 1920.

Pledge — unauthorized pledge by stockbrokers of securities loaned —
sale by pledgee of securities pledged without authority together
with securities of customer lawfully pledged — equitable rights of
owner of securities pledged without authority — equitable lien
as against customer authorizing pledge — failure of owner of
securities pledged without authority to give security entitling her
to injunction pendente lite — res adjudicata.

A firm of stockbrokers, pursuant to authority given to them by a customer,
pledged securities owned by the customer with the defendant bank to
secure loans, and also without authority pledged with the said bank other
securities loaned to it by the plaintiff who was not a customer but who
made the loan for the sole purpose of apparently increasing the broker's
assets during an investigation of its books by a committee of the Stock
Exchange, and the bank having no knowledge of the plaintiff's equities
sold the securities aforesaid excepting certain securities of the customer
who had authorized the pledge, and delivered the remaining securities to
said customer under a judgment recovered against it, owing to the fact
that although the plaintiff had been granted an injunction *pendente lite*
restraining such delivery, she failed to give a bond upon which the injunc-
tion was conditioned.

*Held*, that the plaintiff not having been a party to the action by the customer
was in no way bound by the judgment therein, nor was it conclusive on
the customer as between him and the plaintiff;

That, although the plaintiff has no right of action against the bank, she is
entitled to have the remainder of the customer's securities applied to the
payment of the balance due the bank and to a prior right to any surplus
that may remain to the extent of the value of the bonds, and to an equi-
table lien upon the stock turned over to the customer who has been made
a defendant in her suit.   This, because the amount that the customer paid
to redeem his stock on the insolvency of the broker had been reduced by
the amount realized on the sale of the plaintiff's securities, and he had
thus been unjustly enriched and to that extent must account therefor to
the plaintiff.

Furthermore, under the circumstances aforesaid the plaintiff is entitled to a
judgment against the firm of brokers and the individual members thereof
for the value of her bonds less the amount to be paid to her by the customer.

APPEAL by the defendant, The Mechanics and Metals National Bank of the City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 25th day of June, 1918, upon the decision of the court rendered after a trial at the New York Special Term.

*Frank M. Patterson* of counsel [*Franklin H. Mills* with him on the brief], for the appellant.

*Francis M. Scott* of counsel [*Joseph Fischer* and *David Vorhaus* with him on the brief; *House, Grossman & Vorhaus,* attorneys], for the respondents.

PAGE, J.:

As this case is so closely connected with that of Fisher against the defendant bank, a somewhat detailed statement of facts is necessary to the proper understanding of the present case.

Prior to May 18, 1914, defendants Stoppani and Hotchkin were a firm of stockbrokers engaged in business in New York city. For several years prior to May 18, 1914, the firm of Stoppani & Hotchkin kept an account with the defendant bank, and from time to time borrowed money on collateral securities pledged by the firm with the bank. These loans were made under a collateral loan agreement, entered into between the firm and the bank on February 15, 1910, which recited the intention of the firm to borrow money from the bank from time to time and to pledge property as collateral security therefor; provided that all property pledged or delivered to the bank should be collateral security for the payment of such loan and any other obligations of the firm to the bank; and gave the bank full power to sell such security and apply the proceeds to the liability of the firm. Between March 31, 1910, and May 18, 1914, the defendant Fisher traded with Stoppani & Hotchkin upon a general speculative and margin account. On Fisher's order Stoppani & Hotchkin bought and sold securities on margin. On May 18, 1914, there was due on this account from Fisher to Stoppani & Hotchkin the sum of $6,639.04. On May 14, 1913, defendant Fisher delivered to Stoppani & Hotchkin the following

instrument: "Consent is hereby given that all securities now carried or that may be carried on margin by Stoppani & Hotchkin for account and risk of the undersigned and any securities deposited or that may be deposited to protect said margin account may be loaned by said Stoppani & Hotchkin or may be pledged by them either separately or together with other securities either for the sum due thereon to said Stoppani & Hotchkin or for any greater sum, all without any further notice. Saving the right of the undersigned to have control and to take up said securities at any time upon payment of balance due as provided in Chap. 500, Laws of 1913."*

On March 8, 1913, Stoppani & Hotchkin, who held as collateral to secure Fisher's account 100 shares North American Company stock, $3,000 Brooklyn Rapid Transit Company bonds and 100 shares United States Rubber Company first preferred stock, pledged and delivered such securities to defendant bank to secure the general indebtedness of the firm to the bank under the collateral loan agreement. On August 18, 1913, the firm pledged and delivered to the bank, for the same purpose, 100 shares American Smelting and Refining Company stock, which it had also held as collateral for Fisher's account. On February 24, 1914, plaintiff loaned and delivered to Stoppani & Hotchkin four New York city coupon bonds and six United States Steel Company coupon bonds, all payable to bearer. This was done upon the representation and understanding that the bonds were to be shown as assets of the firm to a committee of the Consolidated Stock Exchange of New York city, which was about to examine the firm's books, for the purpose of permitting the firm to represent to the committee that the bonds were the firm's property, to enable the firm to make a more favorable showing of assets, and upon the firm's promise and agreement that the securities would be safely kept in its possession and would be returned to plaintiff on demand. At that time plaintiff did not have a trading or speculative account with the firm, and was not indebteded to the firm or its members, nor did she borrow any money from them on that day on the bonds. The learned

---

* Adding to Penal Law, § 956.— [REP.

court at Special Term has found that these securities "were not delivered * * * for any purpose except to give the temporary custody thereof to said firm." This finding would seem to be inconsistent with the finding that they were delivered for the purpose of permitting the firm to represent to the committee that the bonds were the firm's property, but it should be understood to refer to the relations between the plaintiff and the defendant, and if it is inconsistent with the preceding finding the appellant is entitled to the benefit of the more favorable finding.

On the same day that Stoppani & Hotchkin received the bonds they pledged and delivered them to the defendant bank to secure the general indebtedness of the firm to the bank under the collateral loan agreement.

On May 18, 1914, Stoppani & Hotchkin, individually and as partners, made an assignment for the benefit of their creditors to the defendant Gilbert, who qualified and acted as assignee and thereafter qualified and is now acting as trustee in a bankruptcy proceeding instituted against the firm and its members.

On May 18, 1914, the firm of Stoppani & Hotchkin was indebteded to defendant bank in the sum of $49,000 for money loaned by the bank to the firm pursuant to the loan agreement. As collateral for this indebtedness the bank held the stock which had been pledged with Stoppani & Hotchkin as collateral to secure Fisher's account, the bonds of this plaintiff, together with certain other bonds and stocks. The amount of the indebtedness was loaned by the bank to Stoppani & Hotchkin by reason of and in reliance upon the securities mentioned, which the bank received in the ordinary and usual course of business, with the belief that Stoppani & Hotchkin were the owners and rightful holders and had full authority to pledge, transfer or otherwise dispose of them, and without any knowledge of any fraud practiced upon the plaintiff by said firm of Stoppani & Hotchkin.

The loan was not paid and it became necessary for the bank to resort to the securities. On May 26, 1914, the bank made a sale of the plaintiff's bonds, of the $3,000 Brooklyn Rapid Transit bonds, and 100 shares of the United States Rubber first preferred stock belonging to Fisher and certain

other stocks and bonds.  The aggregate net proceeds of these sales amounted to $43,326.93, which was applied on the loan of Stoppani & Hotchkin, leaving an indebtedness of $5,673.07 and interest.  There remained unsold the 100 shares of North American stock and the 100 shares of American Smelting and Refining stock which belonged to Fisher.  After this sale had been made the plaintiff, on June 3, 1914, served upon the bank and defendant Gilbert, as assignee of Stoppani & Hotchkin, a written notice that the United States Steel and New York city bonds were plaintiff's property and that she claimed possession of them.

On June 2, 1914, the defendant Fisher, claiming to be the owner of the North American, United States Rubber and American Smelting and Refining stocks, brought an action in the Supreme Court against the bank, the firm of Stoppani & Hotchkin and its individual members, and the three corporations whose stock the plaintiff in that action claimed, to recover possession of and to establish title to the stock certificates, claiming that the certificates had been fraudulently obtained from him by Stoppani & Hotchkin and had been wrongfully pledged by the latter to the bank and demanded that the securities be delivered up to him as the original owner.  This case was tried and it was decided that the bank was entitled to hold the North American and American Smelting and Refining stock and to liquidate the balance of the loan to Stoppani & Hotchkin, amounting to $6,435.92 and interest, out of such securities.  The decision also held that Fisher was entitled to any surplus remaining after the sale and application of the securities, and awarded judgment in favor of Fisher against Stoppani & Hotchkin for $13,335.32.  On April 28, 1915, judgment was entered on the decision.  On May 3, 1915, Fisher moved to amend the judgment, and on June 7, 1915, an order was entered amending the judgment and directing, among other things, that upon payment to the bank of the sum of $6,435.92 with interest from March 12, 1915, and costs, the bank deliver to Fisher the certificates for the North American and American Smelting and Refining stock, and that if such stock were so redeemed, the North American Company and the American Smelting and Refining Company, upon surrender of such certificates, issue to Fisher in his

name new certificates in place thereof.  An appeal was taken by the bank from the order resettling the judgment and was subsequently dismissed by order of the Appellate Division on February 11, 1916.

It appears from the motion papers and the decision on file in our clerk's office that actions were brought by this plaintiff which will be hereinafter mentioned, and the bank had not served its printed papers on appeal, because the pendency of these actions had made it impossible for the bank to determine whether the prosecution of the appeal was necessary for the protection of its rights, and requested that the appellant's time to serve the case on appeal be extended to February twenty-fifth on condition that if this appeal was not perfected by that time appellant would consent to the dismissal thereof.  In the decision it is stated that the judgment is wholly in favor of the bank and the plaintiff has a vested interest against the bank by the judgment for the surplus stock, "and the judgment itself relieves the bank of all responsibility for surplus upon delivering the same to plaintiff," and granted the motion to dismiss.

On May 24, 1915, this plaintiff instituted an action in the Supreme Court against the bank, Stoppani & Hotchkin individually and as partners, and Gilbert, as trustee in bankruptcy of the firm and its members.  The plaintiff demanded judgment that the defendants in that action be directed to deliver to her the United States Steel and New York city bonds wrongfully pledged by the firm, or in the event of their failure to do so the plaintiff have judgment against them for $10,000; that an injunction issue against the bank restraining it from selling or disposing of the securities.  On September 15, 1915, the plaintiff applied at Special Term for an order restraining the bank from paying over to Fisher the balance remaining in its hands after the satisfaction of the indebtedness of Stoppani & Hotchkin, pending the determination of the rights of the plaintiff to such fund; restraining Fisher from taking any steps against the bank to enforce or collect his judgment and to join Fisher as a party defendant in the action.  The motion came on to be heard before the justice who tried the *Fisher* case and was denied by an order entered September 15, 1915.

On or about November 1, 1915, plaintiff moved for a reargument of the previous motion, and after a hearing it was denied. On December 27, 1915, an order was entered discontinuing the action on consent of all the parties thereto. The present action was commenced on or about December 27, 1915. The complaint alleges the facts of the loaning of the New York city and United States Steel Company bonds by plaintiff to defendants Stoppani & Hotchkin and their agreement to return the bonds; the pledge of the bonds, without plaintiff's knowledge or consent, together with other securities, by Stoppani & Hotchkin to the bank, under the collateral loan agreement; the balance due the bank from Stoppani & Hotchkin on May 18, 1914, namely, $49,000; the value of the bonds, $10,000; plaintiff's discovery of the pledge to the bank on June 1, 1914, and the notice to the bank and demand for possession of the bonds; the sufficiency of the other security to pay Stoppani & Hotchkin's debt to the bank, without resorting to the bonds; that among such other securities were stocks deposited by Fisher with Stoppani & Hotchkin or purchased by them for his account and pledged by them with the bank with Fisher's authority; the sale by the bank of all the collateral except the North American and American Smelting and Refining stock worth in excess of $20,000; the unpaid balance of Stoppani & Hotchkin's debt to the bank, amounting to $6,600; the commencement and trial of the *Fisher* case; the judgment rendered therein; the appeal taken by the bank; the granting of a stay of proceedings; that the bank had not paid Fisher pursuant to judgment; plaintiff's lack of knowledge of the *Fisher* action until the findings were settled, in July, 1915; that any surplus remaining after the satisfaction of the debt of Stoppani & Hotchkin to the bank out of the pledged securities represented the proceeds of plaintiff's securities and should be applied to the liquidation of plaintiff's claim; the assignment of Stoppani & Hotchkin and the subsequent bankruptcy proceedings and the appointment of Gilbert as trustee.

The original answer of the defendant bank, after denying various allegations of the complaint, alleged as a separate defense the facts as to the loans by the bank to Stoppani & Hotchkin under the collateral loan agreement; the unpaid

balance on May 18, 1914; the securities held by the bank as
collateral therefor; the bank's reliance on the securities in
making the loans; its lack of knowledge as to any alleged
fraud practiced upon plaintiff by Stoppani & Hotchkin;
its belief that Stoppani & Hotchkin were the owners author-
ized to pledge, transfer or dispose of the securities; the sale of
them by the bank pursuant to the loan agreement, except
the North American and American Smelting and Refining
Company stock, and the application of the proceeds; and the
institution, trial and judgment in the *Fisher* case.  The answer
of defendant Fisher, after putting in issue portions of the
complaint, sets up several separate defenses, based upon
allegations as to his ownership of the North American, United
States Rubber and American Smelting and Refining stock
and the Brooklyn Rapid Transit bonds; the wrongful pledging
thereof by Stoppani & Hotchkin to the bank; the bank's
disposal thereof; and the proceedings and judgment in the
action brought by him against the bank and others.  In
addition to the dismissal of the complaint, judgment is
demanded for the delivery to Fisher by the bank of the North
American and American Smelting and Refining stocks " free
and clear of all incumbrances," and for the sum of $6,846.96,
and for the modification of the judgment in the *Fisher* action
accordingly.

On January 11, 1916, plaintiff moved for an order staying
all further proceedings under the decree in the *Fisher* action;
restraining the bank from delivering the North American and
American Smelting and Refining stock, or the proceeds, if
they had been sold, to defendant Fisher; and restraining
defendant Fisher from receiving or interfering with such stock
or the surplus which might arise after a sale thereof, until
the further order of the court.  The motion was heard and
on February 17, 1916, an order was entered restraining
defendant Fisher from receiving the securities in question,
except for the purpose of depositing them in court, subject
to the decree to be made herein, or until the further order
of the court, upon condition (1) that plaintiff consent to
try the cause at the March term, and (2) that plaintiff within
five days file a bond with sureties to be approved by the
court, in the sum of $5,000, to secure defendant Fisher from

any damage he might sustain from the depreciation of the securities or otherwise; and also restraining the bank from disposing of the securities until the further order of the court. From this order plaintiff appealed to the Appellate Division, and on February 23, 1916, procured from this court an order directing defendant Fisher and the bank to show cause why so much of the order as required plaintiff to file a bond should not be stayed; why defendant Fisher should not be restrained from receiving the securities, except to deposit them in court, subject to the decree thereafter to be made, and why the bank should not be restrained from delivering the securities to defendant Fisher or disposing of them until the determination of the appeal. The order to show cause also contained a similar injunction, pending the determination of the motion. After a hearing by the Appellate Division, plaintiff's motion was denied, and the stay contained in the order to show cause was vacated, by an order entered on March 7, 1916, and a copy of the order, with notice of entry, was served upon the attorney for the bank. Plaintiff failed to file the bond directed by the order of February 17, 1916. On April 24, 1916, this action came on for trial at Special Term. The justice holding said term thereafter rendered an opinion in which he said: " An examination of the record in *Fisher* v. *Mechanics and Metals National Bank* and the opinion of Mr. Justice SHEARN (89 Misc. Rep. 587) leads to but one conclusion: That whatever assets of Stoppani & Hotchkin remain in the hands of the bank under the collateral agreement are disposed of by the decree in that action. It is conceded by plaintiff herein that the assets that she desires to impress with her claim are those referred to in the judgment of Fisher against the Mechanics and Metals National Bank. While it is true that the plaintiff was not a party to the Fisher suit, yet this court having determined the title to the assets remaining in the hands of the bank, disposes of plaintiff's claim thereto." (95 Misc. Rep. 374.)

On June 16, 1916, a judgment was entered dismissing the complaint. An appeal was taken to this court and the judgment reversed and a new trial granted (176 App. Div. 507).

It appears that up to the time of the second trial of this action the courts had acted upon the theory that the claims

urged were by different persons to the pledged collateral in the possession of the bank. The appeal by the bank in the *Fisher* case was dismissed because the judgment was favorable to it on the main issue and that payment under the judgment protected the bank. The decision of this court on the former appeal was based upon the theory, as clearly appears from the opinion (176 App. Div. 507), that the only controversy was between the plaintiff and Fisher. The plaintiff conceded that although Stoppani & Hotchkin were guilty of a wrongful conversion, as between herself and the bank, the latter obtained good title as pledgees under the rule of *McNeil* v. *Tenth National Bank* (46 N. Y. 325) and kindred cases, but contended that as between herself and Fisher she was entitled to a ·judgment that the proceeds of Fisher's securities be first applied to the payment of the bank's claim, and that whatever sum might remain after satisfying the bank's claim in full be paid to her in preference to Fisher; the reason for this being that the hypothecation of Fisher's securities was lawful, having been made pursuant to his written authorization, while the pledge of the plaintiff's bonds was unlawful, having been made without her knowledge or consent, and without any authority whatsoever. The judgment was reversed because the justice at Special Term dismissed the complaint, he considering that the judgment in the *Fisher* case concluded the plaintiff. (95 Misc. Rep. 374.) We held that the plaintiff not having been a party to that action was in no way bound by that judgment, nor was it conclusive on Fisher as between him and the plaintiff; if, therefore, he could show, upon a new trial, as he sought to do, but was not permitted, that for any reason his stock stood upon the same footing as that of plaintiff, he was entitled as between them to do so by appropriate proof.

The judgment in the *Fisher* action conclusively determined all questions between Fisher and the bank, but it did not determine any question between Fisher and the plaintiff. Therefore, if at the time of the second trial the securities still remained in the possession of the bank and Fisher had demonstrated no equity, equal or superior to that of the plaintiff, she would have been entitled to a judgment that Fisher's securities be sold and the balance of the debt be

First Department, May, 1920.                [Vol. 191.

paid to the bank and out of the surplus she be paid the value of her bonds, which was conceded to be $10,000, with interest, and that the remainder be paid to Fisher.

After the decision of the appeal the defendant bank served a supplemental answer, in which was set forth the dismissal of its appeal from the Fisher judgment; the bringing of the first action by plaintiff and the various motions therein and the discontinuance of that action; the bringing of the present action, the motion made and granted for the injunction *pendente lite*, upon condition of the giving of a bond by plaintiff, and the failure to give the bond; the trial of the action resulting in the dismissal of the complaint; and the delivery of the stock certificates of the North American Company and the American Smelting and Refining Company to Fisher upon his payment of the amount due the bank, all pursuant to the judgment in the *Fisher* case, and upon Fisher's demand.

These facts were proved. Unless there is something in these facts to materially change the relation of the parties, some act or default of the bank that would charge it with liability and relieve Fisher, in my opinion the case should be considered as it was on the former appeal, as being a question between the plaintiff and the defendant Fisher as to the order of the application of their securities to the payment of the indebtedness to the bank.

While it is true that the judgment in the *Fisher* case was not a binding adjudication on the plaintiff in this action and, therefore, left her free to pursue any remedy she had against either the bank or Fisher, it also gave her no right against either which she did not theretofore possess. As was stated on the former appeal, the bank had a right to sell her bonds and apply them on the indebtedness of Stoppani & Hotchkin, for the reason that the bank took them in good faith and without the knowledge of the fraud of Stoppani & Hotchkin. The sole right that she had was to require that Fisher's securities, which had been rightfully pledged with his consent, should be applied in satisfaction of the indebtedness before recourse could be had to her bonds. Before she notified the bank of her claim, it had already sold her bonds and applied the proceeds to the indebtedness. For this she had no right

of action against the bank.   She did have, however, the right
to seek to have the remainder of Fisher's securities applied to
the payment of the balance due, and a prior right to any surplus
that might remain to the extent of the value of her bonds.
Before the delivery of the stock to Fisher she brought this
action and was granted an injunction *pendente lite*, restraining
the payment over to Fisher of this balance, or the delivery
over of the stock to him upon payment of the balance
remaining due, upon condition that she give a bond to pay,
if it should be held that she was not entitled to relief, the
damages which Fisher would sustain not to exceed $5,000.
Of this privilege she failed to avail herself.   The bank was,
therefore, under compulsion of the judgment in the *Fisher*
case and required to deliver over the securities upon Fisher's
tender of payment of the balance.   This delivery was not
in wrong of the plaintiff so far as the bank was concerned,
and gave her no right of action against it.   Fisher, however,
took the securities with notice of the pendency of this suit
and was a party thereto.   His taking the stock gave him
no rights in equity against this plaintiff that he did not
have prior thereto.   He took the stock *cum onere* the plaintiff's
claim.   The amount that he paid to redeem the stock had ·
been reduced by the amount of the proceeds of the plaintiff's
bonds which had theretofore been applied.   He had thus
been unjustly enriched to · that extent and must account
therefor to the plaintiff.

The plaintiff is entitled to a judgment against the firm
of Stoppani & Hotchkin and the individual members of said
firm for the value of her bonds less the amount to be paid by
Fisher.

The judgment and findings inconsistent with this opinion
will be reversed, with costs to the appellant, and judgment
entered dismissing the complaint as against the defendant
the Mechanics and Metals National Bank, with costs, and in
favor of the plaintiff and against the defendant Fisher for
the sum of $4,721.98, with interest from June 16, 1916, together
with the costs of this action, and that it be adjudged that
the plaintiff has an equitable lien on the North American
and the American Smelting and Refining Company stocks,

and that unless the defendant Fisher pays the amount adjudged to be due from him to the plaintiff within five days after the entry of judgment herein, he shall deliver the certificates of said stock to the receiver designated in the judgment to be by him sold at public auction and the plaintiff paid the amount of this judgment and the surplus, if any, remaining after paying the expenses of the sale and the receiver's commission be paid over to the defendant Fisher. And further, that the plaintiff have judgment against the firm of Stoppani & Hotchkin, Joseph H. Stoppani and Walter B. Hotchkin for the sum of $5,278.02, with interest on $10,000 from June 3, 1914, to June 16, 1916, and on $5,278.02 from June 16, 1916, to the date of the entry of the judgment, together with costs.

Order containing the necessary findings to be settled upon notice.

DOWLING, LAUGHLIN and MERRELL, JJ., concur.

Judgment reversed, with costs, and judgment ordered in accordance with opinion. Settle order on notice.

