OPINION OF THE COURT
Edward Greenfield, J.
Plaintiff moves for summary judgment in this action to compel defendant 55 East 66th Street Corp. to cancel a stock certificate held by Joan Lalor and to issue a new certificate in lieu thereof to plaintiff or her assignee. John Lalor, father of defendant Joan Lalor, moves to intervene.
A brief history of the facts and prior lawsuits in this case is necessary to an understanding of the issues presented in this case.
In 1976, one Doreen Taylor obtained a default judgment in the Small Claims Part of the New York City Civil Court against Joan Lalor in the sum of $350. When Ms. Lalor failed or refused to pay the amount of the judgment, Ms. Taylor turned the matter over to a New York City Sheriff *194 who eventually sold at auction Ms. Lalor’s interest in a cooperative apartment located at 55 East 66th Street, New York, New York. The apartment, alleged to be worth nearly $200,000, was sold to plaintiff Mrs. House for $15,000, out of which sum Ms. Taylor was paid the $350 owed to her. The balance was turned over to Ms. Lalor.
Ms. Lalor thereafter commenced an action against Ms. Taylor and Mrs. House to void the sale of her stock interest in the co-operative corporation. John Lalor intervened in that action and participated in the trial. After a nonjury trial before Mr. Justice Allen Murray Myers of this court, the complaint was dismissed and by judgment dated June 27, 1980, Justice Myers directed Ms. Lalor “to endorse and deliver to * * * Mrs. House, the certificate for 165 shares of stock of 53 East 66th Street Corporation or 55 East 66th Street Corporation, whichever be the correct name, the certificate intended representing plaintiff’s stock interest in the corporation which owns 53 East 66th Street Corporation, and that plaintiff [Ms. Lalor] assign to * * * [Mrs. House] the attendant proprietary lease of Apartment 2-D”.
The judgment also provided that in the event Ms. Lalor failed to comply with the court’s discretion, that Mrs. House “shall be entitled to have the aforesaid certificate of stock canceled and a new certificate issued to her by 53 East 66th Street Corporation or by the present owner of the premises known as 53 East 66th Street, New York, New York.”
Justice Myers’ judgment was unanimously affirmed by the Appellate Division, First Department, on January 12, 1982 (86 AD2d 782) and the motion for leave to appeal to the Court of Appeals was denied on March 30, 1982 (56 NY2d 502).
Plaintiff contends that under Justice Myers’ judgment, she is entitled to the relief she seeks. She also contends that since the defendant co-operative corporation (the Coop) was apprised of the original judgment against Ms. Lalor and the Sheriff’s sale and at no time took a position adverse to such sale, the Co-op should now be estopped from denying the validity of the sale.
*195 Defendant Co-op contends that since it was never a party to either of the prior lawsuits it is not bound by the determinations rendered in them. The Co-op further contends that there has been no showing that it was duly notified of each step in the prior actions and enforcement proceedings. The Co-op alleges that even if it knew of the pending Sheriff’s sale, it had no duty to act and, therefore, cannot be estopped based upon its failure to act. Lastly, the Co-op contends that the lease, the Co-op’s certificate of incorporation and its by-laws all make it abundantly clear that Lalor could not have transferred her shares and proprietary lease without the prior consent of the Co-op’s board of directors. It is therefore argued that the sale to Mrs. House, without such prior consent, was of an interest greater than Lalor had and that, therefore, the sale is void.
First, defendant is correct in its assertion that it is not bound by Justice Myers’ judgment since it was not a party to that action (Gouert v Mechanics & Metals Nat. Bank, 191 App Div 854, affd 233 NY 576). Of course, a review of that judgment demonstrates that it does not require the Co-op to do anything; it merely states that Mrs. House is entitled to have the shares of the Co-op formerly owned by Ms. Lalor issued to her. The direction for the Co-op to issue the shares is the issue in this case. This is not a matter of fine distinctions or the splitting of hairs. The former suit by Ms. Lalor against Mrs. House finally and absolutely determined who, as between those two persons, had the superior right to the co-operative apartment. That suit determined that Mrs. House was entitled to the apartment and it terminated Ms. Lalor’s right to the apartment.
The court also agrees with the Co-op in its assertion that it is not estopped to deny Mrs. House’s ownership of the apartment. In order to establish that the Co-op should be estopped, Mrs. House would have to show that the Co-op had an affirmative duty to act (Wagner v Manufacturers Trust Co., 237 App Div 175, affd 261 NY 699). This she has wholly failed to do. However, the fact that the Co-op may not be estopped does not place it in any better position with respect to the apartment.
The shares of stock allocable to the apartment are personalty and the Co-op has no reversionary or other interest *196 in them. The Co-op’s only interest is that the terms and conditions of transfer of the shares, if applicable in these circumstances, are met.
Thus, the Co-op’s position that by acquiring the Lalor interest in the Co-op apartment without the prior written approval of Co-op’s board of directors, plaintiff obtained an interest greater than Lalor had is untenable. It is beyond cavil that Mrs. House only purchased that which Ms. Lalor was capable of transferring. Title to Ms. Lalor’s shares could be obtained either by voluntary transfer (with the prior consent of the Co-op) or involuntarily by Lalor’s death or by operation of law.
The proprietary lease between the Co-op and the individual apartment owners specifically contemplates the involuntary transfer of shares and assignment of the proprietary lease at the unnumbered paragraph following subdivision 4 of paragraph sixth. That paragraph in part states: “No executor, administrator, personal representative or successor of the Lessee, or trustee, or anyone to whom the interest of the Lessee hereunder shall pass by law, shall be entitled to assign this lease * * * upon compliance with the requirements of this paragraph Sixth.” (Underscoring supplied.)
It is clear that Mrs. House obtained her interest by operation of law at a judicially ordered Sheriff’s sale and it is equally clear that she may only assign the lease and transfer the shares to someone who has obtained the prior written approval of the Co-op’s board of directors. Thus, the assertion that paragraph 35 of the Co-op’s by-laws entitled it to treat the shareholder of record as the owner of the shares regardless of notice to the contrary is only half the story. That provision goes on to state “except as expressly provided by the laws of New York.” The laws of New York provide that a debtor’s assets may be sold to pay a judgment and the position now taken by the Co-op that it may continue to treat Ms. Lalor as the owner of the apartment violates the public policy of this State.
It is the public policy of this State that creditors who have legitimate claims against those who own property may attempt to enforce their rights by means of levy and *197 execution upon the debtor’s property (except to the extent that exemption is granted by law). A private body, be it a commercial corporation, a co-operative, or a bank may not, through its own rules and regulations, immunize an individual’s property interest in such bodies from execution through its own internal rules and by-laws. It is even more important to the continued health of co-operative housing that an individual’s lease and shares in a co-operative not be treated as some special class of inalienable property. With the very substantial price which is being asked for most co-operative apartments today, the acquisition of such apartments can be obtained only through financing, with the shares and lease in the apartment being given as security for the loan made available to purchase the apartment. Were the courts to adopt a policy of refusing to enforce judgments obtained after the default of the debtor, what lender would thereafter extend credit on the security of the co-operative apartment? Without transferability, the value of the security is ephemeral. If the position of the Coop were to prevail in this case, every prospective lender would be on notice that the co-operative apartment itself would be worthless as security, and prospective purchasers would hereafter find themselves unable to secure financing for apartments. Thus, a denial of transferability could well result in all the other apartments in the Co-op becoming nontransferable and illiquid in the future.*
The Co-op may aptly provide for restrictions upon a voluntary transfer of the shares and the lease in order to have some degree of control over the preservation of some standards for occupants. It cannot prevent the transfer of an interest in the Co-op apartment by operation of law. So far as the Co-op is concerned, it makes little difference if the title of the shares and the lease devolve upon death under the laws of inheritance, or whether they are transferred pursuant to the Debtor and Creditor Law or the Bankruptcy Law. “A construction of the [restrictions] *198 would be unreasonable which would authorize the directors of a corporation to ‘refuse to consent’ to a transfer which has been effected by operation of law regardless of the will of the debtor stockholder.” (Matter of Starbuck, 251 NY 439, 443.)
The objections of the Co-op to the transfer of Ms. Lalor’s interest to Mrs. House can be given no weight and Mrs. House is entitled to have the Co-op cancel the shares and lease held in Ms. Lalor’s name and to have new shares and a new proprietary lease issued to her.
Even though the transfer of the shares and the lease take place pursuant to operation of law, the Co-op still has the right to approve before she takes occupancy. If she attempts to do so, or seeks to transfer her shares to another, either she or her transferee must obtain the approval of the Co-op’s board of directors (see Matter of Starbuck, supra, p 444). This is so because the Co-op is entitled to screen and approve persons who wish to become members of their community.
In passing upon the fitness of Mrs. House or her transferee to be the occupant of the apartment, the Co-op must apply the same standards and criteria as applied to other prospective tenants. The Co-op may not simply reject her because she purchased the shares and proprietary lease at a Sheriff’s sale.
What we have then is very closely akin to a power of appointment (see EPTL art 10, 10-2.1, 10-2.2, subd [a]; 10-3.1) with a secondary issue of whether Mrs. House can appoint herself. She can if she gets the consent of the Coop’s board of directors.
The cross motion of John Lalor to intervene in this action is denied. The judgment of Justice Allen Murray Myers, affirmed by the appellate courts, finally determined and terminated any rights that Ms. Lalor had in the apartment, the shares and the proprietary lease. The other issues sought to be raised by him were also determined by Justice Myers’ judgment and may not be collaterally attacked in this case.
*199 It is unfortunate that Ms. Lalor’s obstinacy has cost her dearly. Nevertheless, this court is obliged to apply the law.

 In many instances in New York City, banks arranging to finance groups of apartments in the process of going co-operative have the Co-op board sign a recognition agreement, pursuant to which the Co-op board recognizes in advance the right of the bank to sell the interest of a defaulting borrower in the apartment to a third party who meets the approval of the board. This is not universal, however, and may not be available for isolated individual transactions. When a title passes by operation of law, it does so regardless of prior expressed consent.